**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **ABDULLAH ABRIQ, on behalf of himself and others similarly situated,** | ) | |
| | ) | |
| | ) | **No. 3:17-CV-0690** |
| **Plaintiffs,** | ) | |
| | ) | **Judge Crenshaw** |
| **v.** | ) | **Magistrate Judge Holmes** |
| | ) | |
| **DARON HALL in his official capacity as** | ) | |
| **Sheriff of Davidson County; and THE** | ) | |
| **METROPOLITAN GOVERNMENT OF** | ) | |
| **NASHVILLE AND DAVIDSON COUNTY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## THE METROPOLITAN GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Defendant, the Metropolitan Government of Nashville and Davidson County ("Metropolitan Government") submits this memorandum of law in support of its motion to dismiss and states to the Court as follows:

### PRELIMINARY STATEMENT

*Plaintiff's Factual Allegations*

Plaintiff Abdullah Abriq ("Plaintiff") is a foreign national who immigrated to the U.S. under an F-1 student visa. On April 6, 2017, U.S. Department of Homeland Security Immigration and Customs Enforcement ("ICE") took Plaintiff into custody pending removal proceedings. *See* Am. Compl. Doc. No. 26 at ¶¶ 6, 11. Plaintiff alleges in his Amended Complaint that ICE conducted a warrantless arrest of Plaintiff without probable cause to believe that Plaintiff had committed a crime. *Id.* at ¶¶ 14-16. Plaintiff alleges that ICE unlawfully

seized him because he is not in actuality subject to removal under applicable federal immigration laws.[1]  *Id*. at ¶ 17.

On that same date, ICE presented Plaintiff to the Davidson County Sheriff's Office ("DCSO") to be held.  *Id*. at ¶ 12.  Plaintiff claims that DCSO, in accepting him from ICE and housing him pending removal proceedings, violated his constitutional rights under the Fourth and Fourteenth Amendments.  Plaintiff also brings Tennessee state law claims of false imprisonment and unjust enrichment.  Plaintiff seeks declaratory and injunctive relief as well as nominal monetary damages.

Plaintiff claims that DCSO cannot hold individuals presented to it by ICE because no valid contract exists allowing DCSO to house federal immigration detainees.  As a basis for his argument, Plaintiff relies upon the fact that, under the Metro Charter and Tennessee law, DCSO can only enter into a contract with ICE through legislation duly approved by the Metro Council. Plaintiff claims that the only valid contract allowing DCSO to house ICE detainees expired in 2012[2] and thus DCSO is acting unlawfully in continuing to house ICE administrative detainees. Plaintiff concedes, however, that DCSO could lawfully house ICE administrative detainees if it had a duly authorized contract allowing it to do so.  Doc. No. 26 at ¶¶ 84, 124.

---

[1] The Metropolitan Government would note, however, that Plaintiff cannot validly challenge the lawfulness of his removal proceedings in this Court.  *See* 8 U.S.C. § 1229a(a)(3) ("a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States. Nothing in this section shall affect proceedings conducted pursuant to section 1228 of this title"); *see also Christ v. Detroit Police Dep't*, No.06-11833, 2007 WL 522714, at *2 (E.D. Mich. Feb. 14, 2007)("[A]ny claims related to Plaintiff's immigration removal proceedings are not cognizable in this Court. Neither the Immigration and Customs Enforcement Agency nor the agent involved are named as defendants. If Plaintiff wishes to challenge the validity of his Stipulated Request for Removal Order and Waiver of Hearing, he would have to raise the issue before the Immigration Court.").  Therefore, should Plaintiff attempt to rely on the alleged unlawfulness of ICE's detention of him as a basis for his claims against the Metropolitan Government, the Metropolitan Government reserves the right to move to stay these proceedings until such time as that issue is resolved in Immigration Court, which is the only forum in which it lawfully can be determined under federal law.

[2] Plaintiff's Amended Complaint also recites the history of the ICE 287(g) program in Nashville. The Metropolitan Government does not dispute that history, but it is not relevant to the inquiry here. Plaintiff was not being detained or questioned pursuant to 287(g).

### Powers of the Sheriff

Because Plaintiff's Amended Complaint focuses on Tennessee state law and the powers of the Sheriff as support for both his federal constitutional claims and his state law claims, the Metropolitan Government provides this summary of the state law powers at issue. The Metropolitan Charter section 16.05 provides that the Sheriff shall have such duties prescribed by Tennessee Code Annotated section 8–8–201 or by any other provisions of general law. Pursuant to section 8–8–201 (2011), the Sheriff has broad general powers, specifically including the power to "take charge and custody of the jail of the sheriff's county, and of the prisoners therein; receive those lawfully committed, and keep them personally, or by deputies or jailer, until discharged by law." Tenn. Code Ann. § 8–8–201(3), and "such other duties as are, or may be, imposed by law or custom." Tenn. Code Ann. § 8–8–201(36)(b)(2).

Nothing in either the Metropolitan Charter or state law limits the power of the Sheriff to take charge of the jail, which necessarily includes determining who may be housed there. Moreover, nothing in the Metropolitan Charter or state law restricts the Sheriff to only taking custody of individuals detained pursuant to a particular legal process or a validly executed contract. Moreover, two different Middle District of Tennessee Judges have held that a county Sheriff must comply with an ICE detainer. *Rios-Quiroz v. Williamson County,* 2012 WL 3945354 (M.D. Tenn. Sept. 10, 2011)(Todd Campbell)(8 C.F.R. § 287.7 mandates county sheriff to hold plaintiff for 48 hours and any challenge to the constitutionality of the regulation is directed to the Federal Government not the county defendant); *Ramirez-Mendoza v. Maury County,* 2013 WL 298124 (M.D. Tenn. Jan. 25, 2013)(William Haynes)(same).

### The 1996 Intergovernmental Service Agreement ("1996 IGSA")

As grounds for his claims in this lawsuit, Plaintiff insists that DCSO cannot validly house ICE detainees because no contract is in place allowing DCSO to do so. Section 18.17 of the

3

Metro Charter anticipates cooperative endeavors between metropolitan officials and outside authorities and authorizes the mayor and council of the Metropolitan Government to enter into agreements with federal and state agencies. *See* Metropolitan Charter § 18.17, certified copy attached to motion as Exhibit A to motion. Pursuant to Ordinance No. O96-567, the Metropolitan Council authorized the Davidson County Sheriff to enter into an Intergovernmental Service Agreement ("IGSA") with the United States Marshals Service to house federal prisoners. *See* Ordinance attached to motion as Exhibit B to motion; 1996 IGSA attached to motion as Exhibit C to motion.[3]

Desiring a "formal binding relationship" the purpose for the agreement was "for the detention of persons charged with or convicted of violations of Federal law or held as material witnesses at Davidson County jail." *See* Ex. C, 1996 Agreement, Article I Purpose. Under the IGSA, DCSO agreed to accept as "federal prisoners those persons committed by federal law enforcement officers for violations of federal laws only upon presentation by the officer of proper law enforcement credentials." *Id.*, Article IV, Receiving and Discharge. Multiple federal agencies possess the authority to present individuals for housing at DCSO, and the contract specifically references the Immigration and Naturalization Service (predecessor to ICE), the Drug Enforcement Agency, the United States Marshall Service, or other federal agencies with law enforcement authority. *Id.,* Article IV, Receiving and Discharge. The initial term of the 1996 IGSA was 10 years, but the IGA continues indefinitely unless cancelled by one of the parties. *Id.*

---

[3] A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment. *Lynch v. Leis,* 382 F.3d 642, 648 n. 5 (6th Cir. 2004); *Kostrzewa v. City of Troy*, 247 F.3d 633, 644 (6th Cir .2001). The documents attached as exhibits to the Metropolitan Government's motion are all public records and thus do not convert the motion to one for summary judgment.

at p. 4. A rider to the IGA was subsequently added in August 2007[4] specifically referencing ICE. ICE. *See* August 2007 Letter and IGSA rider, attached to motion as collective Exhibit D.

***Plaintiff's Legal Claims***

Plaintiff's Amended Complaint is subject to dismissal in its entirety, First, Plaintiff lacks standing[5] to bring claims for injunctive or declaratory relief because he has not sufficiently alleged a concrete threat of future injury. Second, Plaintiff cannot state Fourth or Fourteenth Amendment claims under U.S.C. § 1983 ("Section 1983") based on alleged violations of Tennessee state law or the Metro Charter. Plaintiff's housing by DCSO while removal proceedings are pending is not an unreasonable seizure under the Fourth Amendment. In addition, to the extent that the Fourteenth Amendment applies, DCSO's detention of Plaintiff does meet the requisite "shock the conscience" standard for Fourteenth Amendment liability.

With regard to Plaintiff's state law claims, Plaintiff does not sufficiently plead an unjust enrichment claim because he provides no well-pleaded factual allegations to support the notion that he conferred a benefit upon DCSO while being housed at DCSO or that DCSO appreciated any such benefit under circumstances that would make it unequitable for DCSO to not pay for such benefit. Finally, Plaintiff's false arrest claim fails because the Metropolitan Government is

---

[4] The actual signature on the rider has a 2006 date, but the effective date of the rider is listed as August 2007 and the letter enclosing the rider also has that date.

[5] Further, to the extent that Plaintiff attempts to bring class claims to avoid his own lack of standing and cure any pleading deficiencies regarding standing in the original complaint, he cannot validly do so. A party without standing may not amend its complaint in order to create standing where none existed in the first place. *Zurich Insurance Co. v. Logitrans, Inc*., 297 F.3d 528, 531 (6th Cir. 2002); *Stapp v. Broadwing, Inc*., No. 1:07–CV–00970, 2009 WL 530100, at *3 (S.D. Ohio Feb. 27, 2009) ("Because the Court finds that plaintiffs lack standing under the Amended Complaint, the Court cannot allow Plaintiffs to amend the Complaint to create jurisdiction retroactively."); *Farmers & Merchants State Bank v. Direct Scaffold Servs. Co., LLC,* No. 3:09-CV-0376, 2016 WL 4177083, at *4 (M.D. Tenn. Aug. 8, 2016).

immune from such a claim pursuant to the tenets of the Tennessee Governmental Tort Liability Act ("GTLA") and common law.  Accordingly, the Court should dismiss this lawsuit.

## LEGAL ANALYSIS

### I.    Standard of Review

#### A.    *12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction*

When a defendant moves to dismiss on grounds of lack of subject matter jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990).  Motions pursuant to Fed. R. Civ. P. 12(b)(1) challenging the Court's subject matter jurisdiction "come in two forms: (1) a facial attack which merely tests the sufficiency of the pleading and (2) a factual attack which argues the existence or non-existence of certain facts which deprive the Court of jurisdiction." *Hudson v. AJS Associates*, 2008 WL 5214203 at *2 (M.D. Tenn. Dec. 12, 2008)(copy attached)(citations omitted).

When there is a factual attack on subject matter jurisdiction, no presumptive truthfulness applies to the complaint.  Once a factual attack is raised, the court must weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction does or does not exist. *See Gentek Building Products, Inc. v. Steel Peel Litigation Trust,* 491 F.3d 320, 330 (6th Cir. 2007).  The court may proceed to weigh the evidence and satisfy itself as to its power to hear the case.  *Hudson* at *2 (citations omitted).

Moreover, before the Court can assert jurisdiction or make any inquiry into the sufficiency of a complaint, a plaintiff must establish Article III standing.  *Newsome v. Batavia Local Sch. Dist*., 842 F.2d 920, 922 (6th Cir. 1988).  Standing is the "threshold question in every federal case." *Coyne v. American Tobacco Co*., 183 F.3d 488, 494 (6th Cir. 1999). Without standing, there is no subject matter jurisdiction.  *See Mausolf v. Babbitt*, 85 F.3d 1295, 1301 (8th

Cir. 1996)("The standing requirement is, at its core, a constitutionally mandated prerequisite for federal jurisdiction.").

### B.     *12(b)(6) Motion to Dismiss for Failure to State a Claim*

To survive a motion to dismiss brought pursuant to Fed. R. Civ. Pro. 12(b)(6), a plaintiff must allege in a complaint "enough facts to state a claim to relief that is plausible on its face.*" Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-58, 562-63, 570 (2007).

The *Twombly* standard is not limited to antitrust cases.  Rather, "[t]hough *Twombly* determined the sufficiency of a complaint sounding in antitrust, the decision was based on [the Court's] interpretation and application of Rule 8 [of the Federal Rules of Civil Procedure]." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1953 (2009).  The "decision in *Twombly* expounded the pleading standard for 'all civil actions,'" including this one. *Iqbal,* 129 S. Ct. at 1953.

## II.     <u>The Court lacks subject matter jurisdiction over any claim for injunctive or declaratory relief because Plaintiff does not have standing.</u>

In this case, Plaintiff has no standing to sue for injunctive or declaratory relief. The "irreducible constitutional minimum of standing contains three requirements: (1) injury in fact, (2) causation, and (3) redressability." *ACLU v. Nat'l Sec. Agency,* 493 F.3d 644, 659 (6th Cir. 2007).  Injury in fact is a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical. Causation is a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. Redressability is a likelihood that the requested relief will redress the alleged injury. *Hange v. City of Mansfield, Ohio*, 257 F. App'x 887, 891 (6th Cir. 2007).

In applying the first requirement of a concrete injury, the Supreme Court has held that a plaintiff's standing to seek injunctive or declaratory relief depends on the likelihood of future harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). "Past exposure to illegal conduct

does not in itself show a present case or controversy regarding injunctive relief ....” *O'Shea v. Littleton,* 414 U.S. 488, 495–96 (1974). Instead, party must show “a non-speculative threat that he [or she] will again experience injury as a result of the alleged wrongdoing.” *Werner v. Primax Recoveries, Inc.,* 365 Fed.Appx. 664, 668 (6th Cir.2010). Where the threat of repeated injury is speculative or tenuous, a plaintiff lacks standing to seek injunctive relief. *Cox v. Blue Cross Blue Shield of Michigan,* 166 F. Supp. 3d 891, 899 (E.D. Mich. 2015)(citing *Taylor v. Mich. Dep't of Natural Res.,* 502 F.3d 452, 464–465 (6th Cir. 2007)).

In this case, Plaintiff lacks standing to pursue declaratory and injunctive relief because his threat of future injury is based purely on his unsupported predictions about the future. As Plaintiff concedes in his Amended Complaint, he is no longer housed at DCSO. Generally, when a prisoner or detainee is released from a facility, he no longer has standing to challenge the policies or actions of that facility by seeking injunctive or declaratory relief. *See*, *e.g.*, *Lynch v. Leis*, 382 F.3d 642, 648 (6th Cir. 2004)(finding that arrestee out on bond lacked standing to challenge facility's policy of only allowing inmates to make collect telephone calls); *Gavitt v. Ionia Cty.,* 67 F. Supp. 3d 838 (E.D. Mich. 2014)(Arrestee, who was released from prison post-conviction after exculpatory evidence was discovered, lacked standing to assert any claim for injunctive relief against county on behalf of unnamed third parties); *see also Ridderbush v. Naze,* 64 F.3d 665 (7th Cir. 1995).

Here, Plaintiff attempts to manufacture standing through a series of allegations based on what-ifs and predictions of what might happen in the future. Plaintiff, who is currently housed at an ICE detention facility, alleges that he is entitled to a bond hearing under federal law. He alleges that he intends to request that hearing, but stops short of alleging that he actually has made such a request. Doc. No. 26 at ¶ 111.

Plaintiff further alleges that he "fully expects" ICE "will either release him on his own recognizance or that an immigration judge will grant his bond request, at which point he will return to Davidson County to be with his fiancée." *Id*. However, Plaintiff provides no well-pleaded factual allegations as to the basis for these high expectations, which hinge entirely on future decisions made by other people. Plaintiff's "expectations" are really nothing more than hopeful speculation as to the outcome of this bond hearing that he has not yet requested and guesses regarding ICE's future conduct.

Plaintiff alleges that, *if* a bond is set, and *if* he makes bond, or *if* he is released on his own recognizance, he will come back to Davidson County. He then alleges that there is a possibility that he could be arrested by immigration at any time, notwithstanding the fact that he alleges that he would be lawfully free on bond at the time. *Id*. He provides no well-pleaded factual allegations as to why ICE might re-arrest him while he is free on bond or on his own recognizance.

Plaintiff goes on to predict that he would be "likely" be placed back at DCSO, *id*. at ¶ 112, but this is merely another prediction of how ICE would act if it re-arrested him. The concerns set forth in the Amended Complaint that ICE may have removed Plaintiff from DCSO in the first place to try and render his claims moot in this case, *id*. at ¶¶ 108-109, highlight the speculative nature of this prediction of the future, given that it would require ICE to reverse course, *if* it re-arrested Plaintiff, by housing him at DCSO and thus arguably rendering his claims once again justiciable.

In sum, Plaintiff tries to create standing based on various presuppositions of what might happen in the future, most of which are based on his speculation as to what, ICE, an entity that is not a party to this action, might do. These kinds of allegations are not sufficient to show "a

sufficient likelihood that [Plaintiff] will again be wronged in a similar way" in the future by DCSO. *Lyons,* 461 U.S. at 111, 103 S.Ct. 1660.  Therefore, Plaintiff lacks standing to pursue injunctive and declaratory relief.

Plaintiff also seems to allege in his Amended Complaint that he should be deemed to have standing because the issues in this case are capable of repetition but evading review.  Doc. No. 26 at ¶¶ 106-109.  As a threshold matter, that principle might apply to a overcome a mootness challenge, but "[s]tanding admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 170 (2000)(citations omitted).  Standing doctrine ensures, among other things, that the resources of the federal courts are devoted to disputes in which the parties have a concrete stake.

Moreover, as evidenced by the Amended Complaint, the basis for Plaintiff's argument that the issues in this case are "capable of repetition but evading review" stems from the fact that Plaintiff chose to sue only the Metropolitan Government and not ICE.  The Amended Complaint contains the following allegations:

> 107.   The Defendants claim to have no control over the length of detention any particular administrative detainee and the location in which an administrative detainee is housed. The Defendants claim that ICE has authority to remove administrative detainees from the Defendants' custody at its sole discretion and to move those detainees out of this jurisdiction at its ICE's own whim.
>
> 108.   In light of the Defendants' position, ICE and the Defendants can attempt to evade constitutional review of the Defendants' actions by moving the Plaintiff and other administrative detainees out of the jurisdiction during the pendency of litigation.
>
> 109.   The Plaintiff's own experience exemplifies this problem. The Plaintiff filed his Verified Complaint and associated Motion

> for Temporary Restraining Order on April 6, 2017, and this
> Court set a hearing for Wednesday, April 12. Counsel for the
> Plaintiff notified multiple officials at ICE and Metro Nashville
> that the Plaintiff was expected to appear at a court hearing on
> Wednesday, April 12, and that the Plaintiff was applying for a
> writ from the Court to compel his appearance. Notwithstanding
> these efforts, ICE did not respond to Plaintiff's counsel,
> unilaterally removed the Plaintiff from the DCSO's physical
> custody on Tuesday April 11, 2017, and transferred the Plaintiff to
> a facility in Alabama.

Doc. No. 16 at ¶¶107-109.

Respectfully, if Plaintiff had named ICE as a defendant in this action, therefore making

ICE subject to orders of this Court like the writ referenced in paragraph 109 of the Amended

Complaint, that would remove the possibility of any "attempt to evade constitutional review of

the Defendants' actions by moving the Plaintiff and other administrative detainees out of the

jurisdiction during the pendency of litigation." If Plaintiff had sued ICE, this Court could order

ICE not to remove Plaintiff or others from DCSO custody as part of this litigation. Plaintiff,

however, chose not to do so. Plaintiff does not get the benefit of having standing conferred upon

him, even if the "capable of repetition but evading review" principle creates an exception to the

standing doctrine, merely because he chose not to sue the party whose actions allegedly cause the

"capable of repetition but evading review" principle to potentially apply.

Simply put, Plaintiff has no standing to bring claims for injunctive and declaratory relief

in this case. The Court should therefore dismiss all such claims.

### III.    Plaintiff cannot state a Fourth Amendment claim.

Plaintiff's Fourth Amendment claim fails for three reasons: 1) Plaintiff has no

constitutional right to choose his detention facility, which is in effect what he is attempting to do;

2) the placement of Plaintiff at DCSO does not constitute an actionable seizure; and 3) even if

housing an inmate on behalf of ICE could constitute an actionable seizure, at all times the Sheriff had the authority to house Plaintiff.

## A.    *There is no constitutional right to choose your detention facility.*

The Constitution does not secure Plaintiff the right to be confined in any particular jail or detention facility, and the decision for ICE to utilize DCSO to hold Plaintiff is not subject to review. *Meachum v. Fano,* 427 U.S. 215, 224 (1976); *Lyons v. Papantoniou,* 558 F.Supp. 4 (W.D. Tenn. April 7, 1982) *aff'd* 705 F.2d 455 (6th Cir. 1982). Given a valid reason for detention—ICE's authority—Plaintiff may be constitutionally deprived of his liberty to the extent that he may be confined in any facility so long as the conditions of confinement do not otherwise violate the Constitution. *Meachum,* 427 U.S. at 224. There is no authority under the Fourth Amendment or any other constitutional provision for the notion that being held at a local facility under federal authority, with or without an authorizing contract, constitutes a constitutional violation. Indeed, federal law explicitly states that a contract is not required for local law enforcement officers to cooperate with federal authorities "in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10); *see also Santos v. Frederick County Board of Commissioners,* 2010 WL 3385463, *3, n. 9 (D.Md. 2010) (observing that officers not participating in the 287(g) program are still permitted to assist in the enforcement of federal immigration laws).

Plaintiff alleges that DCSO is somehow liable for unlawfully detaining him because ICE lacked probable cause to arrest him and then presented him to DCSO without a warrant. However, even assuming that to be true, an Order was presented to DCSO by ICE identifying Plaintiff as being subject to removal from the United States and ordering DCSO to detain him. *See* Order, attached to Motion as Exhibit E.  Plaintiff presents no well-pleaded factual allegations

to support the notion that DCSO, as the dentation facility, had any reason to know that probable cause was lacking for Plaintiff's seizure or to question the validity of the Order. A jail can lawfully rely on a facially valid detention order, even if it later turns out that order was erroneous. *See e.g.*, *Shelton v. Wallace,* 886 F. Supp. 1365, 1371 (S.D. Ohio 1995), *aff'd,* 91 F.3d 144 (6th Cir. 1996).

DCSO had an Order from ICE to detain Plaintiff, and the Amended Complaint contains no allegations to even suggest that DCSO had a reason to suspect that Order to be invalid. Thus, Plaintiff cannot state a Fourth Amendment claim against DCSO for detaining him, even if his underlying arrest by ICE lacked probable cause. Plaintiff's Fourth Amendment claim should be dismissed.

**B.** ***The transfer of Plaintiff from ICE to DCSO is not a "new seizure" required to be supported by probable cause.***

Additionally, Plaintiff cannot prevail on a Fourth Amendment claim because a separate seizure, and thus a separate actionable Fourth Amendment violation, did not spring from the transfer of Plaintiff's physical custody from ICE to DCSO. Courts have only recognized a constitutional claim in the context of ICE detainees when the plaintiff was eligible for release on underlying state law charges but remained in custody pursuant to an ICE detainer warrant. *See Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015) (because Morales was kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes—one that must be supported by a new probable cause justification); *Miranda-Olivares v. Clackamas Cty.,* No. 3:12-CV-02317-ST, 2014 WL 1414305, at *8–9 (D. Or. Apr. 11, 2014). That is not the fact scenario presented in this case.

The District Court of Oregon's decision in *Miranda-Olivares* highlights the deficiencies of Plaintiff's claim. In *Miranda-Olivares,* the defendant county booked the plaintiff on state

charges. 2014 WL 1414305, *1. After her booking, the defendant county received an ICE detainer warrant and the court set bail at an amount the plaintiff was willing and able to pay. *Id.* Because of the ICE detainer warrant and statements from the defendant county that even if she posted bond she would be detained pursuant to the detainer warrant, plaintiff did not post bond. Instead, she filed a lawsuit against the defendant county alleging a Fourth Amendment violation. *Id.* In declining to grant the defendant county summary judgment, the court found that the continued detention exceeded the scope of the jail's lawful authority over the plaintiff and thus constituted a new arrest that must be supported by probable cause. *Id.* at 10. The court held that the detainer warrant itself did not provide probable cause for continued detention because it merely indicated that ICE had initiated an investigation to determine whether the plaintiff was subject to removal, while stating no basis for the investigation. The warrant was also unaccompanied by an arrest warrant or any other charging document. *Id.* at 1, 10.

Conversely, Plaintiff here has not alleged that he was he was eligible for release at any point after arrival at the DCSO facility. From the time DCSO began housing Plaintiff on April 6, 2017 until the present time, ICE had legal authority over the Plaintiff and could dictate his detention. *See Roman v. Ashcroft,* 340 F.3d 314, 320 (6th Cir. 2003)(although the warden of each detention facility technically has day-to-day control over alien detainees, the INS District Director for the district where a detention facility is located "has power over" alien habeas corpus petitioners). Accordingly, because DCSO's detention was a continuation of ICE's custody and authority, there can be no Fourth Amendment violation on the part of DCSO.

## C. The Sheriff has the authority to house ICE detainees.

The crux of Plaintiff's Amended Complaint focuses not on the reasonableness of his detention, which is the touchstone of the Fourth Amendment, but on an interpretation of Tennessee state law: Does the Sheriff of Davidson County have the authority to hold a pre-trial

ICE detainee? As a threshold matter, state law does not set the constitutional floor. *Virginia v. Moore,* 553 U.S. 164 (2008)(holding that the police did not violate the Fourth Amendment when they made an arrest that was based on probable cause but prohibited by state law, or when they performed a search incident to the arrest.). Indeed, state rules and regulations are irrelevant to issues of whether a Fourth Amendment violation has occurred. *Cooper v. California,* 386 U.S. 58 (1967)(concluding that whether state law authorized a search was irrelevant as to whether the search violated the Constitution).

As discussed above, DCSO's detention of Plaintiff complied with constitutional mandates, and this should end the inquiry as to whether Plaintiff can state a Fourth Amendment claim. However, to the extent the Court entertains the effect of state law on an alleged Fourth Amendment violation, the result is the same: Plaintiff cannot state a claim because the Sheriff has the authority to hold the Plaintiff.

Pursuant to the 1996 IGSA, which was approved by the Metropolitan Council and continues in effect today, DCSO accepts federal prisoners from a variety of law enforcement agencies in return for a stated per diem. *See* Exhibit C. At the heart of Plaintiff's claim in this case is his argument that DCSO is acting without authority because there is no contract in place specific solely to the housing of ICE Administrative Detainees, with the only contract authorizing that particular activity having expired in 2012. However, just because the terms of the 1996 IGSA are generally applicable to all federal detainees does not mean that it does not provide valid authority for DCSO to hold ICE detainees.

The 1996 IGSA authorizes DCSO to detain "persons charged with or convicted of violations of Federal law or held as material witnesses." While Plaintiff is correct that removal proceedings are civil rather than criminal in nature, it is beyond dispute that it is a violation of

federal immigration law to remain in the country without legal authorization. The 1996 IGSA does not authorize only the detention of those who violate federal *criminal* law, but of any individual charged with a violation of *any* federal law. *See* Exhibit C. By its plain language, the 1996 IGSA authorizes DCSO to house Plaintiff for ICE pending removal proceedings. Indeed, a rider to the IGA was subsequently added in August 2007 specifically referencing ICE. *See* Exhibit D.

Because the 1996 IGSA remains in place and authorizes DCSO to hold Plaintiff, Plaintiff cannot state a Fourth Amendment claim even if an alleged violation of state or municipal law could somehow form the basis for Plaintiff's constitution claim. The Metropolitan Government is entitled to dismissal of Plaintiff's Fourth Amendment claim.

## IV. Plaintiff cannot state a Fourteenth Amendment substantive due process claim.

Similarly, Plaintiff cannot state a substantive due process claim. Plaintiff's Fourteenth Amendment claim is based on the same allegations that form the basis of his Fourth Amendment claim: that his rights are being violated because DCSO is holding ICE administrative detainees without an operative contract.

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.' " *Graham v. Connor*, 490 U.S. 386, 395(1989). Here, because the Fourth Amendment protects against the type of conduct Plaintiff also alleges is a violation of his substantive due process rights, this claim is "covered by" the Fourth Amendment and should be analyzed only under that constitutional provision. *See Ciminillo v. Streicher,* 434 F.3d 461, 465 (6th Cir. 2006)(alleged conduct that does not implicate a constitutional right protected by another amendment will be

analyzed under the substantive due process component of the Fourteenth Amendment).    As a result, Plaintiff's Fourteenth Amendment claim should be dismissed.

Moreover, to the extent that a separate Fourteenth Amendment claim exists in this case, Plaintiff must prove that the challenged government action was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395 (1926); *Patel v. Penman,* 103 F.3d 868, 874 (9th Cir.1996) (citations omitted), *overruled on other grounds by Nitco Holding Corp. v. Boujikian,* 491 F.3d 1086, 1089 (9th Cir. 2007). The standard is whether the challenged conduct "shocks the conscience," under which "only the most egregious executive action can be said to be 'arbitrary' in the constitutional sense." *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998), *abrogated on other grounds by Saucier v. Katz,* 533 U.S. 194 (2001).

Government action taken as the result of "reasonable, though possible erroneous, legal interpretation" does not rise to the level of egregious conduct. *Brittain v. Hansen* 451 F.3d 982, 996 (9th Cir. 2006). Courts "do not require government officials to act as legal experts to avoid violating the Constitution." *Id.; see also Range v. Douglas,* 763 F.3d 573, 591 (6th Cir. 2014)(deliberate indifference in the constitutional sense requires that the officials knew of facts from which they could infer a "substantial risk of serious harm, that they did infer it, and that they acted with indifference toward the individual's rights)(citations omitted).

In this instance, DCSO relied on the 1996 IGSA as providing authority for DCSO to continue to house "persons charged with or convicted of violations of Federal law or held as material witnesses," including those charges with violation of immigration laws after the 2007-2012 IGSA expired.  This reliance was reasonable because the plain language of the contract authorizes detention of anyone charged with violation of federal law and specifically mentions

INS (the predecessor to ICE) as an agency that could commit individual to DCSO custody. The 1996 IGSA is still in effect and a rider to the IGA was subsequently added in August 2007[6] to specifically reference ICE. Therefore, even if the Metropolitan Government's interpretation of and reliance upon the 1996 IGSA is found to be erroneous, it is not unreasonable and does not "shock the conscience" *Miranda-Olivares,* 2014 WL 1414305, at *8–9.

Because DCSO's housing of Plaintiff, even if found to be unlawful, does not "shock the conscience," this Court should dismiss Plaintiff's Fourteenth Amendment claim.

## V.    Plaintiff fails to state an unjust enrichment claim.

The elements of an unjust enrichment claim are: 1) "[a] benefit conferred upon the defendant by the plaintiff"; 2) "appreciation by the defendant of such benefit"; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Patterson v. Patterson,* No. M201600886COAR3CV, 2017 WL 1433310, at *9 (Tenn. Ct. App. Apr. 20, 2017)(citations omitted). Plaintiff has not sufficiently pleaded those elements in this case.

Plaintiff alleges in his Amended Complaint that he somehow conferred a benefit upon the Metropolitan Government by being arrested by ICE and then detained at DCSO. Doc. No. 26 at ¶ 153. Respectfully, this contention is the kind of legal conclusion masquerading as a factual allegations that *Twombly* and *Iqbal* have held insufficient to state a claim. *See Twombly,* 550 U.S. at 555 (the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As the Amended Complaint alleges, any monies that DCSO received for housing Plaintiff came from the federal government, not from Plaintiff. *Id*. at ¶ 155. Neither Plaintiff, nor any

---

[6] The actual signature on the rider has a 2006 date, but the effective date of the rider is listed as August 2007 and the letter enclosing the rider also has that date.

agent of Plaintiff, or any entity or person with whom Plaintiff was in any way affiliated, is alleged to have provided goods, services, or monies to DCSO.  Indeed, the Amended Complaint is devoid of allegations that somehow Plaintiff himself undertook any actions that benefitted DCSO in any way while at DCSO, during which time Plaintiff was provided housing and food at the federal government's expense.

Plaintiff also does not plead that DCSO appreciated the notion that Plaintiff was conferring a benefit upon it by being administratively detained pending removal proceedings. Finally, Plaintiff has provided no well-pleaded allegations to illustrate that it would be unjust for DCSO to retain payments that it received for housing administrative detainees that it did indeed house with approval and payment from the federal government.

While Plaintiff's unjust enrichment theory is creative, it is not supported by the law of what an unjust enrichment claim actually is under Tennessee law.  The claim should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).  Alternatively, because it involves a pure issue of Tennessee state law, this claim should be dismissed on jurisdictional grounds.

## VI.    **The Metropolitan Government is immune from Plaintiff's False Imprisonment Claim.**

The Metropolitan Government is a governmental entity subject to the provisions of the GTLA.  Hence, the Metropolitan Government is protected by the governmental immunity provided by the GTLA, which states in pertinent part:

> (a)    Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury, which may result from the activities of such governmental entities, wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary. . .

> (c)    When immunity is removed by this chapter any claim for damages must be brought in strict compliance with the terms of this chapter.

TENN. CODE ANN. § 29-20-201.

The general rule in Tennessee is that municipalities shall be immune from suit, subject to certain specified exceptions under the GTLA. Any plaintiff alleging that the circumstances of a particular case fall under one of those exceptions to immunity must bring his or her claim "in strict compliance with the terms" of the Act. TENN. CODE ANN. § 29-20-201(b). Further, it is well accepted that the "Act [GTLA] is in derogation of the common law and thus must be strictly construed." *Lockhart v. Jackson-Madison County Gen. Hosp.,* 793 S.W.2d 943, 945 (Tenn. Ct. App. 1990).

The GTLA removes the Metropolitan Government's immunity from suit for certain acts on the part of its employees. The GTLA provides that immunity is removed "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment." Tenn. Code Ann. § 29–20–205. This provision is subject to several enumerated exceptions, including a list of intentional torts set forth in § 29–20–205(2). While "false impressment pursuant to a mittimus issued by a Court" is specifically listed as an intentional tort for which the Metropolitan Government has not waived its immunity, the term "false imprisonment," without the caveat that it be pursuant to a mittimus, is not. However, the Metropolitan Government nonetheless retains its immunity for this intentional tort because the GTLA only applies to waive immunity for *negligent* acts of employees.

When an intentional tort not listed as one of the enumerated exceptions in § 29–20–205(2) is at issue, a plaintiff may not hold the governmental entity vicariously liable based on the notion that that particular tort is not specifically identified. Instead, a governmental entity can only be liable for that intentional tort if the plaintiff makes a direct showing of negligence on the part of the governmental entity itself. In other words, because false imprisonment is not a negligent act, the "negligent act or omission" required to waive immunity under § 29–20–205

does not refer to the intentional tort of false imprisonment, but instead to some negligence on the part of the government that allowed the intentional tort to occur. *Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 368–69 (Tenn. 2011). Absent an allegation of such negligence, the exception to sovereign immunity set forth in § 29–20–205 will not apply. *Id*. at 369.

Here, Plaintiff makes no claims of negligence or negligent supervision with regard to his claim for false arrest. Plaintiff alleges that Metropolitan Government employees *intentionally* detained Plaintiff without lawful authority to do so. Such allegations take this claim outside the realm of a GTLA claim (as presumably recognized by Plaintiff, given that he does not cite the GTLA in his Amended Complaint). Because the false imprisonment claim is one for which the Metropolitan Government has not waived its immunity, the Metropolitan Government retains its common law immunity. The Court should dismiss this claim on that basis. Further, as was the case with the unjust enrichment claim, the false imprisonment claim involves purely issues of Tennessee state law and is also subject to dismissal on jurisdictional grounds.

## <u>CONCLUSION</u>

For the foregoing reasons, the Metropolitan Government respectfully asks this Court to dismiss Plaintiff's lawsuit in its entirety.

Respectfully submitted,

DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
JON COOPER, #23571
DIRECTOR OF LAW

/s/ Keli J. Oliver
Keli J. Oliver (#21023)
Melissa Roberge (#26230)
Assistant Metropolitan Attorneys
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341

## Certificate of Service

This is to certify that a copy of the foregoing has been forwarded via the court's ECF/CM system to:

J. Gerard Stranch, IV
Tricia Herzfeld
Anthony A. Orlandi
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L Parks Avenue, Suite 200
Nashville, TN 37203

Elliot Ozment
Ozment Law
1214 Murfreesboro Pike
Nashville, TN 37217

on this the 23rd day of May, 2017.

/s/Keli J. Oliver
Keli J. Oliver