# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ABDULLAH ABRIQ, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | NO. 3:17-cv-00690 |
| DARON HALL, in his official capacity as Sheriff of Davidson County, and the METROPOLITAN GOVERNMENT OF NASHVILLE/DAVIDSON COUNTY, ) ) ) ) ) | JUDGE CAMPBELL |
| Defendants. ) | |

## MEMORANDUM

Pending before the Court, among other things, is the Metropolitan Government's Motion to Dismiss Amended Complaint (Docket No. 61).[1] For the reasons stated herein, the Motion to Dismiss is GRANTED in part and DENIED in part.

## INTRODUCTION

This purported class action is one of several such cases filed across the country in recent years challenging the constitutionality of local law enforcement's detaining immigrants subject to detainers from the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"). Plaintiff Abdullah Abriq is a foreign national who immigrated to the United States under an F-1 student visa. Plaintiff resided in Davidson County and attended Tennessee State University. Plaintiff alleges that he has never been arrested for or convicted of a crime.

Plaintiff alleges that, on April 6, 2017, ICE officials took custody of him, pending civil removal proceedings. Plaintiffs contends that, also on April 6, 2017, ICE officials transferred custody

---

[1] Defendant Hall was dismissed from this action on July 10, 2017 (Docket No. 59).

of him to the Metropolitan Government of Nashville and Davidson County ("Metro") at the Davidson County Jail, where he was held until April 11, 2017. Plaintiff alleges that ICE had no warrant or probable cause to arrest him. Plaintiff also alleges that Metro had no warrant or probable cause to believe Plaintiff had committed a criminal offense[2] or to take custody of him, and that Metro had no lawful authority to hold him as an immigration detainee.

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, ICE may enter into written agreements with state, local or private entities ("§ 287 agreements") that authorize non-federal officials to perform a function of an immigration officer in relation to the "investigation, apprehension, or detention of aliens in the United States." 8 U.S.C. § 1357(g)(1). Plaintiff avers that Metro entered into a § 287 agreement with ICE, under which Metro assumed physical custody of immigration detainees while ICE had legal custody. Metro does not dispute that its § 287 agreement with ICE began in 2007 and expired in 2012. Plaintiff asserts that the Metro Council did not authorize Sheriff Hall to renew the § 287(g) agreement with ICE or to enter into any further agreement with ICE, and that Sheriff Hall publicly announced, in October 2012, that Metro would not renew the § 287(g) agreement with ICE.

Plaintiff contends that, despite the agreement's expiration and having no new § 287 agreement, Metro, through an ongoing custom, policy and practice and at the direction of Sheriff Hall, has continued to "seize" and hold administrative detainees for ICE, including Plaintiff, with no lawful authority to do so. Plaintiff asserts causes of action against Metro for:

Count I - - - violation of the Fourth Amendment to the U.S. Constitution

---

[2] Individuals held for immigration violations are not charged with a crime but, rather, they are civil "administrative detainees" of ICE. *Mercado v. Dallas County, Texas*, 229 F. Supp.3d 501, 511 (N.D. Texas 2017).

Count II - - - violation of the Fourteenth Amendment to the U.S. Constitution

Count III - - - false imprisonment under Tennessee law

Count IV - - - unjust enrichment under Tennessee law

Count V - - - declaratory judgment for *ultra vires* actions

(Docket No. 26).

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

## PRIVATE RIGHT OF ACTION

Metro first argues that, to the extent Plaintiff is claiming that Metro's detention of him is illegal because it was done without a valid contract, in violation of the Metro Charter and Tennessee law about immigration, there is no private right of action to enforce either the Charter or that Tennessee statute. Plaintiff, however, is not suing to enforce the Metro Charter or a Tennessee

3

statute. Plaintiff alleges that Metro did not have a § 287 agreement with ICE when Plaintiff was detained. Plaintiff's claims are based on Metro's alleged lack of authority to detain him without probable cause, in violation of the U.S. Constitution and state tort law.

Plaintiff's claims against Metro arise under 28 U.S.C. § 1983, which provides a right of action against state actors who violate the U.S. Constitution, and under Tennessee state law, not under the Metro Charter or a Tennessee statute. Plaintiff has a private right of action under 28 U.S.C. § 1983 and under Tennessee common law.

Plaintiff asserts that he was detained in violation of his right to be free from unreasonable searches and seizures because Metro had no authority to detain him. Plaintiff further asserts that both Metro and the federal government lacked authority to hold him, contractual or otherwise. Deciding whether Metro had authority to detain Plaintiff involves more than the Metro Charter and a state statute. Whether Metro had authority to detain him involves federal law and regulations concerning the interplay between ICE and local law enforcement. Moreover, whether Metro falsely imprisoned Plaintiff or was unjustly enriched at his expense are causes of action under state common law.

The Court finds that Plaintiff's private right of action is available under both federal and state law, and Metro's motion on this basis is denied. Therefore, the Court need not address Plaintiff's argument about taxpayer standing.

CONSTITUTIONAL CLAIMS

As noted, Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides a private right of action against anyone who subjects any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights or privileges secured by the Constitution and laws of the United States. *Rehbueg v. Paulk*, 132 S.Ct. 1497, 1501 (2012). A Section 1983 plaintiff

must demonstrate the denial of a constitutional right caused by a defendant acting under color of state law. *Epperson v. City of Humboldt*, 183 F. Supp. 3d 897, 903 (W.D. Tenn. 2016); *Carl v. Muskegon County*, 763 F.3d 592, 595 (6th Cir. 2014). Plaintiff adequately pleads that Metro was acting under color of state law when it seized him in April 2017.

Where, as here, claims are made against a municipality, a plaintiff must establish that the plaintiff's harm was caused by a constitutional violation and that a policy or custom of the municipality was the "moving force" behind the deprivation of the plaintiff's rights. *Miller v. Sanilac County,* 606 F.3d 240, 255 (6th Cir. 2010); *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Municipalities are liable for harms resulting from a constitutional violation only when the injury resulted from an implementation of the municipality's official policies or established customs. *Id*. The plaintiff must also demonstrate a direct causal link between the policy and the alleged constitutional violation in order to show that the municipality's deliberate conduct can be deemed the "moving force" behind the violation. *Spears*, 589 F.3d at 256.

Fourth Amendment

Plaintiff alleges that Metro's detention of him, without probable cause to believe he had committed a criminal offense, and based solely on a civil ICE detainer, violated the Fourth Amendment.[3] The Fourth Amendment provides that the right of the people to be secure against unreasonable searches and seizures shall not be violated. U.S. Const. amend. IV.

---

[3] Metro asserts that Plaintiff has no constitutional right to choose a detention facility. Plaintiff is challenging Metro's authority to detain him *at all* and contends that he must be held, not at a specific facility, but at a facility with lawful authority to confine him.

Federal law authorizes immigration officials to interrogate, without a warrant, any alien or person believed to be an alien and to arrest, without a warrant, an alien if the official "has reason to believe" that the alien is in the U.S. illegally. 8 U.S.C. § 1357(a). Immigration regulations provide that ICE detainers are issued to advise another law enforcement agency that ICE seeks custody of an alien presently in the custody of that agency, and a detainer is a request that such agency advise ICE, prior to release of the alien, so that ICE can arrange to assume custody. 8 C.F.R. § 287.7(a). The regulation also states: "Upon a determination by [ICE] to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays, in order to permit assumption of custody by [ICE]." 8 C.F.R. § 287.7(d).

In 2012, this Court found the detainer regulation at 8 C.F.R. § 287.7 to be ambiguous and stated that the courts had not definitively resolved this issue. *Rios-Quiroz v. Williamson County, TN*, 2012 WL 3945354 (M.D. Tenn. Sept. 10, 2012). The Court, in holding that the regulation was mandatory, relied upon *Galarza v. Szalczyk*, 2012 WL 1080020 (E.D. Pa. March 30, 2012), wherein the court found that Section 287.7 "required" the local law enforcement agency to maintain custody of an individual identified as an alien.

After the *Rios-Quiroz* opinion, however, the Third Circuit Court of Appeals reversed *Galarza*. *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014). The appellate court, in a thorough and detailed discussion, concluded that 8 C.F.R. § 287.7 does *not* compel state or local law enforcement agencies ("LEAs") to detain suspected aliens subject to removal pending release to immigration officials. "Section 287.7 merely authorizes the issuance of detainers as requests to local LEAs." *Galarza*, 745 F.3d at 645. Given this, stated the court, the county was free to disregard the ICE

detainer, and it therefore could not use as a defense that its own policy did not cause the deprivation of Galarza's constitutional rights. *Id*.

Recent opinions by other courts around the country have followed the reasoning of the Third Circuit in *Galarza*.[4] These cases, however, involved aliens who were already in the custody of the local law enforcement agency. Here, Plaintiff was not in state custody when he was brought to Metro; he was in ICE custody. Accordingly, while the aforementioned authority assists in providing an understanding of the constitutional issues, that authority diverges from this case in a meaningful way.

As explained above, the INA provides that the Attorney General of the United States **may** enter into a written agreement with a state or any political subdivision of a state, pursuant to which an officer or employee of the state or political subdivision, who is determined by the Attorney General to be qualified to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the U.S., may carry out such function at the expense of the state or political subdivision and to the extent consistent with state and local law. 8 U.S.C. § 1357(g)(1). In performing such a function, an officer or employee of a state or political subdivision thereof shall be subject to the direction and supervision of the Attorney General. 8 U.S.C. § 1357(g)(3). Moreover, an administrative detainee held by local officials pursuant to such an agreement remains under ICE custody and control. *Partak v. Baker*, 374 F. Supp. 2d 551, 557 (E.D. Mich. 2005), *vacated on other grounds*, *Partak v. U.S. Immigration and Customs Enforcement*, 2006 WL 3634385 (6th Cir. 2006); *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003).

---

[4] *See, e.g., Ochoa v. Campbell*, 2017 WL 3476777 (E.D. Wash. July 31, 2017); *Mercado v. Dallas County, Texas*, 229 F. Supp. 3d 501 (N.D. Texas 2017); and *Orellana v. Nobles County*, 230 F. Supp. 3d 934 (D. Minn. 2017).

The law provides that nothing in § 1357(g) shall be construed to *require* any state or political subdivision thereof to enter into an agreement with the Attorney General. 8 U.S.C. § 1357(g)(9).[5] However, the statute also states that nothing in § 1357(g) shall be construed to require an agreement in order for an officer or employee of the state or subdivision to "otherwise cooperate" with the Attorney General in the identification, apprehension, detention or removal of aliens not lawfully present in the United States. 8 U.S.C. § 1357(g)(10)(B).

Metro argues that it was acting in "cooperation" with ICE officials, pursuant to 8 U.S.C. § 1357(g)(10). In *Lopez-Aguilar v. Marion County Sheriff's Department*, __ F. Supp. 3d __, 2017 WL 5634965 at * 6 (S.D. Ind. Nov. 7, 2017), the county had argued that it held the plaintiff based simply on the ICE detainer because it was required to "cooperate" with federal immigration officials. The court held that the circumstances under which state enforcement officers may be authorized to assist or cooperate with the federal government in immigration matters are limited and clearly defined under federal law. The *Lopez-Aguilar* court held that "the full extent of federal permission for state-federal cooperation in immigration enforcement does not embrace detention of a person based solely on either a removal order or an ICE detainer." *Lopez-Aguilar* at * 10. "Such detention exceeds the 'limited circumstances' in which state officers may enforce federal immigration law and thus violates 'the system Congress created.'" *Id*.

In addition, the "seizure" of aliens for known or suspected immigration violations can violate the Fourth Amendment when conducted under color of state law, because the predicate for a seizure

---

[5] Metro argues that nothing in the statute prohibits local agencies from providing housing to detainees without a § 287 agreement, but neither does anything in 8 U.S.C. § 1357(g) give local agencies the authority to provide that housing without probable cause, especially where, as here, no § 287 agreement exists between Metro and ICE.

is probable cause that the arrestee is committing or has committed a crime, and it is not a crime for a removable alien to remain present in the United States. *Lopez-Aguilar* at * 11.[3] Only when acting under color of federal authority - that is, as directed, supervised, trained, certified, and authorized by the federal government - may state officers effect constitutionally reasonable seizures for civil immigration violations. *Id*. at * 13. Detainers, standing alone, do not supply the necessary direction and supervision. *Id*. "[K]nowledge that an individual has committed a civil immigration violation does not constitute reasonable suspicion or probable cause of a criminal infraction" and therefore cannot justify a Fourth Amendment seizure. *Id*.[4]

Here, Plaintiff has sufficiently alleged that Metro took custody of him with no probable cause. If Metro had been acting pursuant to an agreement with ICE, it may have had authority to take custody of Plaintiff, but Plaintiff alleges that Metro had no such agreement in April 2017. In *Ochoa v. Campbell*, 2017 WL 3476777 (E.D. Wash. July 31, 2017), the court noted: "Courts around the country have held that local law enforcement officials violate the Fourth Amendment when they temporarily detain individuals for immigration violations without probable cause." *Ochoa* at * 14 (citing cases). Similarly, the court in *Morales v. Chadbourne*, 793 F.3d 208 (1st Cir. 2015), found "clear law" establishing that the constitution requires probable cause for the immigration detention that a detainer requests. *Id*. at 216.

---

[3] Generally, a reasonable belief that the suspect has committed or is committing a civil offense is insufficient to withstand Fourth Amendment scrutiny. *Mercado v. Dallas County, Texas*, 229 F. Supp.3d 501, 511 (N.D. Texas 2017).

[4] "The concept of probable cause makes sense only in relation to *criminal* offenses." *McKinney v. Fields*, 2010 WL 3583017 at * 6 (E.D. Mich. Sept. 10, 2010) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

Citing *Miranda-Olivares v. Clackamas County*, 2014 WL 1414305 (D. Ore. April 11, 2014), Metro points out that this case is different from the cases Plaintiff cites, because Plaintiff was not already in the custody of Metro, so his detention was not a "continued detention." Metro still detained Plaintiff, however, and Plaintiff alleges that Metro's detention of him exceeded the scope of its lawful authority, constituted a seizure, and must be analyzed under the Fourth Amendment. The court in *Miranda-Olivares* held that it was not reasonable for the county to believe it had probable cause to detain the plaintiff based on the ICE detainer. Plaintiff has adequately alleged that Metro lacked probable cause, an allegation that creates a recognizable claim under the aforementioned authority.

Metro also contends that the sheriff has power, pursuant to Tenn Code Ann. § 8-8-201, to hold individuals such as Plaintiff in the jail. Section 8-8-201 provides a list of the duties of a sheriff. Tenn. Code Ann. § 50-1-101(a) provides that the sheriff (local law enforcement) **_may_** enter into a written agreement with the Department of Homeland Security concerning the enforcement of immigration laws, detention and removals. **_If_** such an agreement is executed, then the local law enforcement officers may be trained to carry out such duties. Tenn. Code Ann. § 50-1-101(b). Accordingly, Metro's argument runs afoul of the maxim *generalia specialibus non derogant*, that the provisions of a general statute must yield to those of a special one. Regardless, Plaintiff alleges the lack of an agreement, so Section 50-1-101(a) appears to be inapplicable at this juncture.

For these reasons, the Court finds that Plaintiff has sufficiently alleged, for purposes of a motion to dismiss, that Metro had no probable cause and no lawful authority to detain him based solely on an ICE detainer and, therefore, violated his Fourth Amendment rights. The motion to dismiss on this issue is denied.

Fourteenth Amendment

Plaintiff also alleges that Metro's seizure and detention constituted a significant deprivation of life and liberty that requires due process protection under the Fourteenth Amendment. Metro asserts that Plaintiff cannot state a substantive due process claim under the Fourteenth Amendment because the Fourth Amendment protects against the type of conduct Plaintiff also alleges violated his Fourteenth Amendment rights. Because the alleged conduct implicates a constitutional right protected by another amendment, the Fourteenth Amendment claim should be dismissed.

If a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendments, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *United States v. Lanier*, 117 S.Ct. 1219, 1228, n. 7 (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). In a case involving the use of excessive force, the Sixth Circuit held that alleged conduct that does not implicate a constitutional right protected by another amendment will be analyzed under the substantive due process component of the Fourteenth Amendment. *Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Cir. 2006) (citing *Lanier* at n.7). Similarly, in *Lanman v. Hinson*, 529 F.3d 673 (6th Cir. 2008), the court followed *Lanier* in finding that because the plaintiff's rights were not governed by the particular provisions of the Fourth Amendment, the more generally applicable Fourteenth Amendment Due Process Clause applied. *Id*. at 681.

Here, Plaintiff's claim for illegal seizure by Metro falls under the Fourth Amendment, not the Fourteenth. The Fourth Amendment, as explained above, specifically prohibits unreasonable searches and seizures. Plaintiff has not sufficiently alleged a Fourteenth Amendment claim, and Metro's Motion to Dismiss the Fourteenth Amendment claim is granted.

## STATE LAW CLAIMS

<u>Unjust Enrichment</u>

Plaintiff avers that Metro had no lawful authority to act as an immigration detention services contractor after its agreement with ICE expired in 2012, and yet it has continued to accept payments from the federal government for housing administrative detainees. Therefore, Plaintiff contends, it would be inequitable for Metro to retain those payments. Plaintiff seeks injunctive relief to stop future unjust enrichment and the creation of a constructive trust consisting of all payments unlawfully detained by Metro.

Under Tennessee law, the elements of an unjust enrichment claim are (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation of that benefit by the defendant, and (3) acceptance of the benefit under such circumstances that it would be inequitable for him or her to retain the benefit without payment of the value thereof. *Miller v. Driver*, 2012 WL 2131230 at * 14 (M.D. Tenn. June 12, 2012) (citing *United States v. Goforth*, 465 F.3d 730, 733-34 (6th Cir. 2006)). To establish an unjust enrichment claim, a plaintiff must show that he conferred a benefit upon the defendant. *Perry v. American Tobacco Co., Inc.*, 324 F.3d 845, 851 (6th Cir. 2003); *Miller* at * 14.

Metro contends that Plaintiff has not stated a claim for unjust enrichment because Plaintiff has not sufficiently alleged that ***he*** conferred a benefit on Metro. Plaintiff alleges that Metro received money for housing immigration detainees, including Plaintiff, from the federal government. Plaintiff does not allege that he conferred a benefit to Metro. Instead, Plaintiff appears to allege that his detention by ICE and placement in Metro's facility served to confer a benefit to Metro. The alleged connection between Plaintiff and any benefits received by Metro from ICE is too attenuated to support a claim that Plaintiff, even indirectly, conferred benefits upon Metro. *See Perry*, 324 F.3d

at 851. For these reasons, Metro's Motion to Dismiss Plaintiff's unjust enrichment claim is granted, and that claim is dismissed.

False Imprisonment

Plaintiff asserts that Metro's detaining and restraining him without lawful authority constituted false imprisonment. He seeks equitable, injunctive relief similar to that he seeks for his unjust enrichment claim - an injunction prohibiting any future such false imprisonment and creation of a constructive trust for all payments unlawfully obtained by Metro for falsely imprisoning administrative detainees after their contract with ICE expired.

Metro asserts immunity from Plaintiff's false imprisonment claim under the Tennessee Governmental Tort Liability Act ("TGTLA"). Historically, governmental entities have been held immune from suit absent their express waiver of that immunity. *Sallee v. Barrett*, 171 S.W.3d 822, 826 (Tenn. 2005). The TGTLA waives, in part, the immunity previously afforded to governmental entities in Tennessee. Immunity is removed, for example, for injury proximately caused by a negligent act or omission of any employee within the scope of his employment. Tenn. Code Ann. § 29-20-205; *Sallee*, 171 S.W.3d at 826. Where immunity is removed, the governmental entity is the proper party defendant. *Id*.

The TGTLA specifically preserves immunity from claims arising out of "false imprisonment pursuant to a mittimus from a court." Tenn. Code Ann. § 29-20-205(2); *Chalmers v. Clemons*, 359 F.Supp.2d 700, 703 (W.D. Tenn. 2005). The government does *not* retain sovereign immunity for injuries arising out of any and all false imprisonments, only those arising pursuant to a mittimus from a court. *Id*. There is no allegation here of imprisonment pursuant to a mittimus from a court, so the government may not claim immunity under the TGTLA for Plaintiff's false imprisonment claim.

*Uhuru v. City of Memphis*, 2008 WL 4646156 at * 10 (W.D. Tenn. Oct. 17, 2008) (citing *Chalmers*, 359 F.Supp.2d at 703).

However, *Chalmers* also held that an action against the government under the TGTLA must be an action for negligence. *Chalmers*, 359 F.Supp.2d at 703; *Uhuru* at * 11. Although the TGTLA does not allow plaintiffs to hold governmental entities vicariously liable for intentional torts not exempted under § 29-20-205(2), it does require a direct showing of negligence on the part of the governmental entity.[5] *Id*. Plaintiff, therefore, was obligated to plead facts that could establish the elements of negligence. *Id*.

Plaintiff's First Amended Complaint does not allege facts related to the false imprisonment claim that could establish the elements of negligence. Indeed, Plaintiff alleges that since September 1, 2012, Metro has ***intentionally*** detained administrative detainees without lawful authority. Docket No. 26 at 28. Therefore, Metro's Motion to Dismiss this claim is granted.

CONCLUSION

For all these reasons, Metro's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Plaintiff's claims for violation of the Fourteenth Amendment, for unjust enrichment, and for false imprisonment are **DISMISSED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR
UNITED STATES DISTRICT JUDGE

---

[5] As Plaintiff admits, the TGTLA removes sovereign immunity for injuries *proximately caused by a negligent act or omission* of a municipal employee. Docket No. 66 at 15; Tenn. Code Ann. § 29-20-205.

14