# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ABDULLAH ABRIQ ) | |
|     Plaintiff, ) | No. 3:17-cv-00690 |
| ) | |
| v. ) | JUDGE CAMPBELL |
| ) | |
| METROPOLITAN GOVERNMENT ) | |
| OF NASHVILLE AND ) | |
| DAVIDSON COUNTY, ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION

Pending before the Court are Defendant's Motion for Summary Judgment (Doc. No. 201) and Plaintiff's Motion for Summary Judgment (Doc. No. 207).

### BACKGROUND

Plaintiff Abdullah Abriq immigrated to the United States under an F-1 student visa and resided in Davidson County. On April 6, 2017, Immigration and Customs Enforcement ("ICE") took custody of Plaintiff, pursuant to the Immigration and Naturalization Act ("INA"), pending civil removal proceedings. Defendant Metropolitan Government of Nashville/Davidson County ("Metro") was not involved in Plaintiff's arrest.

At the time of Plaintiff's arrest, ICE issued to him two forms, a Form I-200 (Warrant for Arrest of Alien) and a Form I-862 (Notice to Appear). The Form I-200 states that an authorized immigration officer "determined that there is probable cause to believe that Abriq Abdullah is removable from the United States." (Doc. No. 222 at ¶ 12). Although Plaintiff disputes that it establishes probable cause, the Form I-862 sets forth four facts concerning Plaintiff that formed

the basis of ICE's determination that probable cause existed to believe he was subject to removal. (*Id*. at ¶ 13).

After arresting him, ICE first took Plaintiff to the local ICE office and then transported him to the Davidson County Sheriff's Office ("DCSO"). When ICE presented Plaintiff for housing at the DCSO, it provided the DCSO with an I-203 Form, which is titled "Order to Detain Alien."[1] (Doc. No. 222 at ¶ 14; Doc. No. 31-5). ICE did not issue a detainer for Plaintiff. (Doc. No. 222 at ¶ 16). DCSO housed Plaintiff from April 6 until April 11, 2017. On April 10, 2017, ICE sent DCSO an I-203B form (Order to Release) for Abriq and on April 11, 2017, ICE removed Plaintiff from DCSO's physical custody.

It is undisputed that, at the time of Plaintiff's arrival at the DCSO in April of 2017, Metro had no contract directly with ICE for the housing or detention of immigration detainees. The Court, therefore, will not address the many arguments and alleged statements of undisputed facts pertaining to whether any such contract governs this case. The issue presented here is whether Metro's actions, taken *without* a contract with ICE, were constitutional.

Metro held Plaintiff pursuant to the ICE Order to Detain, without determining whether there was additional, independent, probable cause to detain him. Metro also held Plaintiff without a warrant from a local magistrate indicating additional probable cause to detain him. (Doc. No. 224 at ¶¶ 43-44). Plaintiff does not dispute that when the DCSO detains a civil

---

[1] The I-203 form is not a criminal warrant or a court-issued document. (Doc. No. 224 at ¶¶ 47-49). Plaintiff agrees that ICE typically transmitted I-203 Forms to the DCSO relative to civil immigration detainees who were not subject to detainers. (Doc. No. 222 at ¶ 17). The form at issue says "Please detain" Abdullah Abriq and is signed electronically by "E7733 BAKER." (Doc. No. 31-5). Despite Plaintiff's continued reference to this document as a "purchase order" or "reimbursement form," it is called an Order to Detain and does not mention purchases or reimbursements. *Id*.

immigrant detainee for whom no state charges are pending, it detains that person based on its assumption that ICE believes the person has committed a civil immigration violation. (Doc. No. 222 at ¶ 18).

Plaintiff sued Metro for alleged violations of his constitutional rights and state law. The Court dismissed Plaintiff's claims for violations of the Fourteenth Amendment, unjust enrichment and false imprisonment. (Doc. No. 137). Plaintiff alleges Metro had no lawful authority to house, hold or detain him as an immigration detainee and, therefore, its actions violated his Fourth Amendment right to be free from illegal seizure. Both parties moved for summary judgment on Plaintiff's remaining Fourth Amendment claim.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however,

3

weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

On Metro's Motion to Dismiss, the Court reviewed the pleadings under a different standard. Now that the facts have been developed through discovery, the Court may consider facts and documents outside the pleadings under the Rule 56 standard of review. Plaintiff repeatedly cites to the Court's earlier opinion, in which the Court found that Plaintiff had sufficiently *alleged* certain things, the standard for a motion to dismiss;[2] that earlier order did not find, however, that Plaintiff was entitled to judgment on those issues. In addition, since the Court's earlier ruling, more federal courts have addressed these issues.

## IMMIGRATION LAW GENERALLY

Federal immigration officials may seize aliens based on administrative warrants attesting to probable cause of removability.[3] *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018); 8 U.S.C. § 1357(a). Arrests based on probable cause of removability - a civil immigration

---

[2] For example, the Court previously stated that Plaintiff had sufficiently *alleged*, for purposes of a motion to dismiss, that Metro had no probable cause and no lawful authority to detain him based solely on an ICE detainer. *Abriq v. Hall*, 295 F. Supp. 3d 874, 881 (M.D. Tenn. 2018). The facts now reveal that Plaintiff was *not* held based on an ICE detainer.

[3] Administrative warrants differ significantly from warrants in criminal cases because they do not require a detached and neutral magistrate. Instead executive officers may issue an administrative warrant upon probable cause to believe a civil infraction has occurred. 8 U.S.C. § 1226; *Lopez-Lopez v. County of Allegan*, __ F. Supp. 3d __, 2018 WL 3407695 at * 3 (W.D. Mich. July 13, 2018).

4

violation - have been long recognized in the courts. *Tenorio-Serrano*, __ F. Supp. 3d __, 2018 WL 3329661 at * 10 (D. Ariz. July 5, 2018). The INA contemplates both formal and informal cooperation between

federal authorities and state/local authorities on immigration matters. *Ochoa v. Campbell*, 266 F. Supp. 3d 1237, 1245 (E.D. Wash. 2017). State/local officials may enter into written agreements with ICE to perform certain enforcement functions usually conducted by federal immigration officers with regard to the investigation, apprehension or detention of certain immigrants. 8 U.S.C. § 1357(g)(1)-(9). Such an agreement is not at issue in this case.

A formal agreement is not required for local and state officials to (1) communicate with ICE regarding a person's immigration status or (2) cooperate with ICE in the "identification, apprehension, *detention*, or removal of aliens" not lawfully present in the United States. 8 U.S.C. § 1357(g)(10) (emphasis added). Cooperation under this statute must be pursuant to a request, approval or other instruction from the federal government. *Lopez-Lopez v. County of Allegan*,[4] __ F. Supp. 3d __, 2018 WL 3407695 at * 2 (W.D. Mich. July 13, 2018) (citing *Arizona v. United States*, 567 U.S. 387, 410 (2012)). When state or local law enforcement officials informally attempt to cooperate with federal immigration agents, they must act on a specific request from ICE agents, and they are limited to actions that do not involve the exercise of their discretion.[5] *Id.* at * 5; *Arizona*, 567 U.S. at 410.[6]

---

[4] An appeal of the *Lopez-Lopez* decision was filed on August 16, 2018.

[5] In *United States v. Ovando-Garzo*, 752 F.3d 1161 (8th Cir. 2014), the court held that a local official's identification of an alien, communication with ICE concerning that alien, and detaining that alien upon ICE's request until a border patrol agent could take custody were not unilateral actions and did not exceed the scope of his authority. *Id.* at 1164.

5

One way in which ICE requests cooperation of state officials without written agreements is by issuing a Form I-247 immigration detainer.[7] These detainers notify a state or locality that ICE intends to take custody of a removable alien, *already in state custody*, when that alien is released from state custody. *Lopez-Lopez* at * 2 (citing 8 C.F.R. § 287.7(a) and (d)). A Form 247 immigration detainer is not at issue here.

DISCUSSION

In this case, no formal agreement exists between ICE and Metro. There was no Form 247 immigration detainer.[8] Plaintiff was not in state custody. There was no request for Metro to continue to hold Plaintiff, because it was not holding him. The cases involving continued detention, pursuant to detainers and/or administrative warrants, of aliens already in state custody, are therefore distinguishable upon their different facts, even if they do offer correct statements of general immigration law. Here, local or state officers neither arrested an alien for an immigration violation nor held an alien based solely on an immigration detainer.

Plaintiff was brought to the DCSO in ICE custody. Metro did not arrest or "seize" Plaintiff; ICE did. A person is seized by law enforcement and thus entitled to challenge the government's action under the Fourth Amendment when an officer, by means of physical force

---

[6] *Arizona* denied state officers the power to unilaterally make removability determinations because a decision on removability requires a determination whether it is appropriate to allow a foreign national to continue living in the United States. *Arizona*, 567 U.S. at 409.

[7] "Detainer" is defined in ICE policy as "notice that ICE issues to a federal, state, local or tribal LEA [law enforcement agency] to inform the LEA that ICE intends to assume custody of a removable alien in the LEA's custody."*Ochoa*, 266 F. Supp. 3d at 1247.

[8] Form I-247 is used as a detainer when aliens are in state custody. Forms I-203(A) and (B), which were used in this case, are used when the alien is in federal custody. Form I-203(A) is an order to detain and Form I-203(B) is an order to release.

or show of authority, terminates or restrains that person's freedom of movement through means intentionally applied. *Goldhaber v. Higgins*, 576 F. Supp. 2d 694, 717 (W.D. Pa. 2007) (citing *Brendlin v. Calif.*, 127 S. Ct. 2400, 2405 (2007)).[9] At the time he was presented to the DCSO, Plaintiff's freedom of movement had already been terminated. *United States ex rel. Vanorsby v. Acevedo*, 2012 WL 3686787 at * 5 (N.D. Ill. Aug. 24, 2012) (merely transferring custody of an individual from one law enforcement agency to another deprives him of nothing he has not already lost by being taken into custody in the first place). This case is distinguishable from those in which courts held that continued detention of an alien *already in state custody* constituted a new seizure. Plaintiff was not in state custody, there was no request for continued detention, and ICE merely transferred custody to the DCSO.

In *United States v. Laville*, 480 F.3d 187 (3d Cir. 2007), the court stated that no authority of which it was aware even implies that a custodial transfer constitutes a "new arrest" requiring a separate showing of probable cause. *Id*. at 196. In that case, the transfer of the detainee was from state/territorial custody to federal custody. The same should apply to transfers from federal custody to state custody. This Court agrees that Metro cannot acquire federal civil immigration arrest powers informally, but Metro did not arrest Plaintiff.   Plaintiff's argument that § 1357(g)(10) does not grant authority to state officers to make immigration arrests, therefore, is inapplicable, because the state officials here did not make an immigration arrest.

Metro held Plaintiff based upon a specific request from ICE agents. That request (I-203 Form) was issued and presented to Metro *after* ICE found probable cause, *after* Plaintiff was

---

[9] In *Goldhaber*, the court held that the defendant was not "seized" for purposes of the Fourth Amendment when he was moved from one facility to another. *Goldhaber*, 576 F. Supp. 2d at 718.

7

"seized," and *after* Plaintiff was in ICE custody. Metro did not unilaterally take any action with regard to Plaintiff - it did not investigate, apprehend or arrest him. ICE made the underlying removability determination. If Metro chooses to cooperate with ICE as it did in this case, it has no discretion at all; it merely follows the direction of ICE agents. *Lopez-Lopez* at * 4. Metro cooperated with a request from ICE to house Plaintiff pending ICE's transfer to another facility.

Because it did not "seize" Plaintiff, Metro did not need probable cause. Even so, Metro did not provide housing for Plaintiff without probable cause. Plaintiff does not dispute that ICE had probable cause to detain him. Plaintiff was in ICE custody pursuant to a warrant for which ICE had to have probable cause. There is no requirement for Metro to find additional probable cause that Plaintiff had committed a crime, as Plaintiff argues. Civil removal proceedings necessarily contemplate detention absent proof of criminality. *El Cenizo*, 890 F.3d at 188.

Metro was entitled to rely upon ICE's determination of probable cause to detain Plaintiff. Under the collective-knowledge doctrine, probable cause in a particular case may be established on the basis of collective knowledge of all law enforcement officers involved, provided there is communication among the officers. *Tenorio-Serrano* at * 10, n. 3. The ICE officers' knowledge may be imputed to local officials even when those officials are unaware of the specific facts that establish probable cause of removability. *El Cenizo*, 890 F.3d at 187. "[A] police force would not function without reasonable reliance on the statements and efforts of others." *Liu v. Phillips*, 234 F.3d 55, 57 (1st Cir. 2000). Local officials have the right to rely upon the federal law enforcement agency charged with the identification, apprehension and removal of illegal aliens from the United States. *People v. Xirum*, 993 N.Y.S.2d 627, 631 (N.Y. 2014) (citing *Arizona*).

8

In this case, Metro received an I-203 Form that indicated Plaintiff was arrested and in ICE custody. Those facts indicate that ICE believed it had probable cause to arrest Plaintiff. Plaintiff has cited no authority stating that Metro could or should have challenged ICE's decision. For purposes of cooperation pursuant to 8 U.S.C. § 1357(g)(10), no written agreement was required and Metro's actions were permitted.

Plaintiff cites this Court's prior reliance upon *Lopez-Aguilar v. Marion Cty Sheriff's Dep't*, 2017 WL 5634965 (S.D. Ind. Nov. 7, 2017), to argue that Metro violated his rights by holding him without probable cause to believe he had committed a crime.[10] Again, that holding was based upon a different standard, and the Court found that Plaintiff had "stated a claim," not that he was entitled to judgment on that claim. It is now undisputed that this case does not involve an ICE detainer. Moreover, as indicated herein, the Court finds that Metro did not violate Plaintiff's rights by holding him without probable cause to believe he had committed a crime, because Metro did not "seize" Plaintiff and Metro was entitled to rely upon the probable cause found by ICE. No one disputes that ICE must establish probable cause in order to detain individuals for immigration violations or that ICE had such probable cause in this case.

In other words, Metro was not required to have additional, independent probable cause to simply "house" Plaintiff for ICE. Metro was not required to have probable cause to believe Plaintiff had committed a crime because Metro did not "seize" Plaintiff. Even if Metro was required to have probable cause to hold him for a civil immigration violation, that probable cause was determined by ICE and then imputed to Metro. Having found that Metro did not "seize"

---

[10] The Court now agrees with the Fifth Circuit that this statement is a misconception. Civil removal proceedings "necessarily contemplate" detention absent probable cause of criminality. *El Cenizo*, 890 F.3d at 188.

Plaintiff and had no requirement to find independent probable cause to accept him for housing from ICE (who *did* have probable cause), the Court need not address Metro's argument about acting under color of state law. Metro's actions did not violate Plaintiff's Fourth Amendment rights.

## CONCLUSION

For these reasons, Metro's Motion for Summary Judgment will be granted, and Plaintiff's Motion for Summary Judgment will be denied. Accordingly, this action will be dismissed.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE